UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ATLANTIC SHORE SURGICAL ASSOCIATES   :
    :
    :       **COMPLAINT**
Plaintiff,     :
    :
    :
-against-     :       Docket No.
    :
    :
UNITEDHEALTHCARE; UNITED     :
HEALTHCARE SERVICES LLC; THE PORT   :
AUTHORITY OF NEW YORK AND NEW   :
JERSEY; and PORT AUTHORITY TRANS-   :
HUDSON CORPORATION,     :
    :
Defendants.     :
    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff, Atlantic Shore Surgical Associates ("Atlantic Shore"), by its attorneys, Harris Beach PLLC, alleges for its Complaint against Defendants, UnitedHealthcare; UnitedHealthcare Service LLC (the two UnitedHealthcare-named defendants shall be referred to as "UnitedHealthcare); The Port Authority of New York and New Jersey; and Port Authority Trans-Hudson Corporation (the two Port Authority-named defendants shall be referred to as "Port Authority"), that:

## INTRODUCTION

1.     This is an action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1001, et seq. and New Jersey law, seeking to recover benefits and reimbursement due to Plaintiff for providing medically necessary services to a beneficiary of Defendants' group health plan.

2.      Atlantic Shore, from June through December 2018, provided medically necessary emergency surgical and related services to its patient, K.O., who is a beneficiary of Defendants' health plan. As we allege in detail below, Defendants failed to reimburse Plaintiff the amounts required under the terms of the applicable health plan, and federal and New Jersey law, for providing the medically necessary services to K.O.

3.       Due to the above, Plaintiff brings this lawsuit against Defendants for their failure to provide full and fair compensation to Atlantic Shore for the medically necessary surgical services it provided to K.O., a beneficiary of Defendants' health plan.

## PARTIES

4.      Plaintiff, Atlantic Shore Surgical Associates, is a medical practice specializing in general surgery with its principal place of business located at 485 Brick Boulevard, Brick, New Jersey.

5.      Atlantic Shore's surgeons provide a wide range of surgical services, including general surgery, laparoscopic/minimally invasive/robotic surgery, weight-loss/bariatric surgery, weight-loss/bariatric surgery, breast surgery, colorectal surgery, oncologic surgery, and head and neck surgery.

6.      Upon information and belief, Defendant UnitedHealthcare is the Claims Administrator of The Port Authority of New York and New Jersey and Port Authority Trans-Hudson Corporation Self-Insured Medical Plans.

7.      Upon information and belief, Defendant UnitedHealthcare's principal place of business is located at 185 Asylum Street, Hartford, Connecticut.

2

8.     Upon information and belief, Defendants Port Authority of New York and New Jersey and Port Authority Trans-Hudson Corporation are the Plan Administrators of The Port Authority of New York and New Jersey and Port Authority Trans-Hudson Corporation Self-Insured Medical Plans.

9.     Upon information and belief, the principal place of business of the Defendants Port Authority of New York and New Jersey and Port Authority Trans-Hudson Corporation are 4 World Trade Center, 150 Greenwich Street, New York, New York.

## JURISDICTION AND VENUE

10.     This Court has subject-matter jurisdiction over Plaintiff's ERISA claims under 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331.

11.     This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

12.     Venue is properly placed in this District under 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

**Patient K.O.**

13.     During the relevant time of June through December 2018, K.O. was a resident of Brick, New Jersey, and a beneficiary of The Port Authority of New York and New Jersey and Port Authority Trans-Hudson Corporation Self-Insured Medical Plans (the "Plans").

14.     On June 20, 2018, K.O. executed an Assignment of Benefits, which provided:

<u>Assignment of Benefits</u>

I hereby assign and convey to the fullest extent permitted by law any and all benefit and non-benefit rights (including the right to any payments) under my health insurance policy or benefit plan to **Dr. Anil Pahuja, Dr. Ashwin Kamath, Dr. Eugene Zurkovsky, Dr. Forrest Rubenstein, Dr. Francis Kelly, Dr. James Pasquariello, Dr. Jonathan Yrad, Dr. Kevin Huang, Dr. Steven Priolo, Dr. Tarun Bhandari, Dr. Rory Snepar, Dr. Jane Park, Dr. Godwin Ofikwu, Dr. Govardhana Yannam, Dr. Yehuda Naiman, Dr. Abha Kathuria** and **Atlantic Shore Surgical Associates** (collectively, the "Providers") with respect to any and all medical/facility services provided by the Providers to me for all dates of service. It is specifically intended by this assignment of benefits to assign to the fullest extent permitted under the law any and all of my rights, including without limitation, the right of one or more of the Providers to (i) execute, in my name and on my behalf, any form, document or instrument required under any applicable insurance policy or benefit plan to further evidence my intent as set forth herein and to avoid any delay in pursuing rights under applicable Federal and State law rules, regulations and requirements, (ii) pursue penalties for and exclusively on behalf of Providers against any insurance policy or benefit plan for failure of the plan administrator to timely produce or respond to requests (including appeals) for all information relating to any plan documents describing the rights under any insurance policy or benefit plan as required by any applicable Federal or State law, (iii) to endorse for me any checks made payable to me for benefits and claims collected toward my account, and/or (iv) to bring any appeal, lawsuit or administrative proceeding, for and on my behalf, in my name against any person and/or entity involved in the determination of benefits under any insurance policy or benefit plan.

Should this assignment be prohibited under my policy/plan, please disclose to Provider in writing such anti-assignment provision, otherwise this assignment shall be effective notwithstanding any anti-assignment clause in any policy/plan.

<u>Designated Authorized Representative</u>

I hereby appoint as a Designated Authorized Representative each of my Providers and each of their respective assistant surgeons, physician assistants, teaching assistants, billing staff, lawyers (including the Law Offices of Cohen and Howard) or any other person or business that provides healthcare activity services as a "business associate' under the Health Insurance Portability and Accountability Act of 1996, as amended ("HIPAA"), and their respective designees (collectively referred to herein as an "Authorized Representative"). This authorization is intended to comply with all requirements of the Employment Retirement Income Security Act of 1974, as amended (ERISA") and any applicable State law. Each Authorized Representative is granted the same rights which I have as a member or beneficiary under my insurance policy or benefit plan, including without limitation:

1.  The right of my Authorized Representative to file claims for benefits on my behalf and directly receive payment for benefits and non-benefits from any third-party payor under my insurance policy or benefit plan, including the right to penalties, interest and attorney fees.

4

2. The right of my Authorized Representative to communicate with insurers, plan fiduciaries, employers and plan and claim administrators relative to all my benefit information and private health information ("PHI" as further defined under HIPAA) and to share and exchange such information with a "covered person" or "business associate" as those terms are defined under HIPPA.

3. The right of my Authorized Representative to send and receive follow-up information and obtain all documentation that ERISA or any State law requires to be provided to me, including, without limitation, plan documents, explanation of benefits, adverse benefit determinations, all relevant documents involving my claim, identity of all persons involved in determining my claim and all documents relied upon in making any determination as to the payment of any amount under the applicable plan documents.

4. The right of my Authorized Representative to file any internal or external member appeal for payment of benefits under any applicable insurance policy or benefit plan.

5. The right of my Authorized Representative to pursue any rights, claim or cause of action through litigation or otherwise under any Federal or State law with respect to payment for services provided by a Provider to me, including penalties, interest and attorney fees.

## June 6, 2018 Treatment

15.     On June 6, 2018, K.O. was admitted through Ocean Medical Center's emergency department with a large abdominal wound with partial wound dehiscence with necrotic subcutaneous tissue.

16.     Dr. Jonathan Yrad, assisted by Dr. Anil K. Pahuja, were the on-call specialists and performed the emergent surgery

17.     Dr. Yrad is board certified in general surgery, trained in hyperbaric oxygen therapy, and a wound care specialist.  He graduated from Cebu Doctors' University, Cebu City, Philippines. He started general surgical training at Silliman University Medical Center, Dumaguete City, Philippines. Dr. Yrad then continued his training in general surgery and trauma at University Medical Center of Southern Nevada in Las Vegas and completed it at Catholic Medical Centers of Brooklyn and Queens in 2004.

18.     Dr. Pahuja is also board certified in general surgery, and fellowship trained in minimally invasive and bariatric surgery. He received his undergraduate degree from University at Albany followed by a Master's degree from Boston University.  He then received his Medical Degree from New York Medical College.  Dr. Pahuja began his surgical residency at St Vincent's Medical Center in New York City and completed his surgical residency at Morristown Medical Center after St Vincent's closed.  He then went on to a Minimally Invasive and Bariatrics fellowship at the Institute for Minimally Invasive and Bariatric Surgery at Westchester Medical Center in Valhalla, NY

19.     As part of K.O.'s treatment, Dr. Yrad performed an excisional debridement on June 6, 2018. Atlantic Shore shortly thereafter submitted a claim to UnitedHealthcare seeking $38,297.10 in reimbursement under CPT code 11046.

20.     UnitedHealthcare initially denied this claim, and Atlantic Shore thereafter timely appealed this denial to UnitedHealthcare.

21.     Subsequent to this initial appeal, UnitedHealthcare made a payment to Atlantic Shore in connection with these services in the amount of $12,765.90, leaving an unpaid balance of $25,531.80.

22.     Atlantic Shore thereafter timely appealed this underpayment to UnitedHealthcare. This appeal has been unsuccessful, leaving an unpaid balance of $25,531.80.

**June 13, 2018 Treatment**

23.     On June 13, 2018, Dr. Yrad, assisted by Dr. Pahuja, performed an abdominal wound exploration with extensive debridement of the muscle and fascia level midline abdominal wound measuring 35x13cm, left flank abdominal wound measuring 15x15cm total 680 square cm, repair

of large incisional hernia with wound dehiscence measuring 35x15cm with bilateral myofascial flap and underlay biologic graft placement.

24.     In connection with this treatment on June 13, 2018, Atlantic Shore submitted reimbursement claims to UnitedHealthcare for excisional debridements (CPT 11043 and 11046) and myocutaneous muscle flaps to close the wounds (CPT 15734). The total amount sought was $132,108.30

25.     UnitedHealthcare initially denied this claim, and Atlantic Shore thereafter timely appealed this denial to UnitedHealthcare. Those appeals have been totally unsuccessful, leaving a total unpaid amount of $132,108.30.

**August 21, 2018 Treatment**

26.     K.O. later presented to Ocean Medical Center on August 21, 2018, due to delayed abdominal wound closure. Dr. Yrad performed a VAC placement.  Prior to this surgery, UnitedHealthcare authorized Dr. Yrad to perform this surgery as medically necessary and granted an in-network exception to him.

27.     For these services performed on August 21, 2018 (CPT 15734 and 97606), Atlantic Shore submitted reimbursement claims to UnitedHealthcare in the amount of $31,068.00.

28.     UnitedHealthcare initially denied this claim, and Atlantic Shore thereafter timely appealed this denial to UnitedHealthcare. Those appeals have been totally unsuccessful, leaving a total unpaid amount of $31,068.00.

**December 5, 2018 Treatment**

29.     On December 5, 2018, K.O. returned once again to Ocean Medical Center for a perforated colon, which was repaired by Dr. Yrad, assisted by Dr. Tarun Bhandari.  Prior to this

surgery, UnitedHealthcare authorized Dr. Yrad to perform this surgery as medically necessary and granted an in-network exception to him.

30.     Dr. Tarun Bhandari is a board-certified general surgeon with Atlantic Shore, who specializes in surgical oncology.  He is a graduate of Mahatma Gandhi Memorial Medical College, Indore, India. He completed his residency in Orthopedic Surgery at Gandhi Medical College, Bhopal, India. He completed his General Surgery Residency at St. Vincent's Catholic Medical Center, NY Medical College and Surgical Oncology fellowship from Roger Williams Medical Center, Providence, RI.

31.     For these services performed on December 5, 2018 (CPT 44626, 49561, 44005, 11406, 49568, 45300), Atlantic Shore timely submitted reimbursement claims in the total amount of $120,682.20.

32.     UnitedHealthcare initially denied this claim, and Atlantic Shore thereafter timely appealed this denial to UnitedHealthcare.

33.     Subsequent to those appeals, UnitedHealthcare failed to provide further reimbursement, leaving $22,589.42 unpaid. None of this amount has been paid to date.

34.     All totaled, the unpaid reimbursement claims for the treatment provided by Atlantic Shore to Plan beneficiary K.O. are in the amount of  $185,765.72.

**Plan Obligation to Reimburse for Emergency Services Rendered**

35.     During all times relevant to this lawsuit, K.O. was a Plan beneficiary.

36.     Based on K.O.'s medical condition and the description of the services rendered on June 6 through June 13, 2018, these services were for an emergency operation and therefore they are required to be administered as an ER claim.

37.    The Emergency Medical Treatment and Labor Act (EMTALA) is a federal law that requires anyone coming to an emergency department to be stabilized and treated, regardless of their insurance status or ability to pay. Under EMTALA, an emergency medical condition is defined as "a condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in placing the individual's health (or the health of an unborn child) in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of bodily organs." EMTALA applies to care provided in-patient following admission through the emergency department until the patient is stabilized. Pursuant to this statute, if a physician is "on-call" and fails to appear within a reasonable amount of time to the emergency department, that physician may be subject to sanctions for violating the EMTALA requirements.

38.    From June 6 through June 13, 2018, K.O. was suffering from an emergency medical condition.

39.    Upon information and belief, during the relevant period, K.O.'s Plan was obligated to reimburse out-of-network physicians – such as Atlantic Shore – for emergency services rendered to Plan at the physicians' billed charges, which are based on FAIRHealth databases.

40.    The amount reimbursed by UnitedHealthcare for the services provided from June 6 through June 13, 2018, are far below Atlantic Shore's billed charges.

**Federal Regulatory Obligation To Reimburse For Emergency Services Rendered**

41.     Additionally, under federal statute (section 2719A(b) of the Public Health Service Act, 42 U.S.C. § 300gg-19a(b)) and federal regulations governing group health plans (29 C.F.R. § 2590.715-2719A(b)(3)), a plan must pay the greater of the following for emergency services (excluding co-payments and co-insurance): (a) the median amount negotiated with in-network providers; (b) the amount for emergency service calculated using the same method the plan generally uses to determine payments for out-of-network services (such as usual, customary, and reasonable amount), excluding any copayment or coinsurance imposed with respect to participant; or (c) the amount that would be paid under Medicare.

42.     Applying the federal regulations to the claims related to services rendered by Atlantic Shore to K.O. from June 6 through June 13, 2018 and the member's plan language, UnitedHealthcare was obligated to reimburse Atlantic Shore significantly more than the amount at which it reimbursed Atlantic Shore.

**New Jersey Statutory Obligation To Reimburse For Emergency Services Rendered**

43.     Additionally, the services rendered were rendered in New Jersey.

44.     New Jersey law at that time requires that treating physicians be paid a fair value for their services when providing care to a patient with an emergency medical condition.

45.     According to N.J.A.C. § 11:4-37.3(b)(2), insurers must "provide that the cost sharing applied to the covered person for emergency care shall be the same regardless of whether the services rendered by network or out-of- network providers" and insurers may not "calculate benefits for services provided by out-of-network providers by using negotiated fees agreed to by network providers."

**Application of In-Network Exception**

46.     With regard to the surgical services provided to K.O. by Atlantic Shore on August 21 and December 5, 2018, UnitedHealthcare, before Atlantic Shore provided the services, authorized the services as medically necessary and granted Atlantic Shore in-network exceptions to perform the surgeries.

47.     Upon information and belief, during the relevant period, K.O.'s Plan was obligated to reimburse out-of-network physicians – such as Atlantic Shore – for services provided under an in-network exception at the physicians' billed charges.

48.     The amount reimbursed by UnitedHealthcare for the services provided on August 21 and December 5, 2018, are far below Atlantic Shore's billed charges and in some cases were not reimbursed at all.

49.     Even if an in-network exception did not apply to the services provided by Atlantic Shore to K.O. on August 21 and December 5, 2018, K.O.'s Plan, upon information and belief, was obligated to reimburse authorized out-of-network physicians – such as Atlantic Shore –based on available data resources of competitive fees in geographic area in which the medical services are provided.

50.      The main available data resource of competitive fees used by UnitedHealthcare and the Plan during period were the FAIRHealth databases.

51.     The amount reimbursed by UnitedHealthcare for the services provided on August 21 and December 5, 2018, are far below the amounts reflected in the FAIRHealth databases.

52.     Regardless, New Jersey law provides that out-of-network physicians are not subject to reimbursement provisions contained in the applicable health plans. Instead, the law requires that

plans compensate out-of-network physicians for the fair value of their services.  *See Aetna Health Inc. v.  Srinivasan*, 2016 WL 3525298 (N.J. Super. Ct. App. Div. 2016).

**Obligation To Pay Interest**

53.     In addition to payment of the reimbursement due it under the Plan as well as federal and state law, Atlantic Shore is entitled to the payment of interest under applicable New Jersey law.

54.     Pursuant to the New Jersey Prompt Payment Regulations (N.J.A.C. 11:22-1.1), a provider is to be paid on a claim for medical services within forty-five days following the date of submission of the claim. All overdue payments bear interest on unpaid billed charges, at the rate of 12 percent per annum.

**Futility/Exhaustion Of Administrative Remedy**

55.     As alleged above, Atlantic Shore has timely appealed UnitedHealthcare's reimbursement determinations.

56.     In any event, UnitedHealthcare and the Plan have engaged in conduct that has rendered additional appeals or attempted appeals by Atlantic Shore futile.

57.     Such conduct includes, without limitation:  (a) refusing to provide the specific reason or reasons for the denial or underpayment of claims; (b) refusing to provide the specific plan provisions relied upon to support its denials or underpayments; (c) refusing to provide the specific rule, guideline or protocol relied upon in making the decisions to deny or underpay claims; (d) refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment codes; (e) refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the

claims for benefits; (f) refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that appeals procedure; (g) refusing to provide Atlantic Shore with the documents and information relevant to UnitedHealthcare's denial of the claims; and (h) refusing to timely issue required notifications that the claims have been denied or underpaid.

58.    Accordingly, Atlantic Shore's efforts to obtain proper payment for the claims submitted on behalf of K.O. have largely fallen on deaf ears.

59.    Having exhausted all reasonable administrative remedies and appeals – to the point where further administrative actions and appeals would be futile – Atlantic Shore has been forced to commence this lawsuit.

## **FIRST CAUSE OF ACTION**

60.    Atlantic Shore repeats and re-alleges the allegations of the preceding paragraphs as if set forth at length herein.

61.    Atlantic Shore has standing to pursue claims under ERISA as the assignee and authorized representative of K.O., a Plan beneficiary.

62.    As the assignee of Empire Member K.O., Atlantic Shore is entitled to payment under the Plan and in accordance with federal and New Jersey law for the medical services provided to K.O. by Atlantic Shore.

63.    Even if the Plan prohibits an assignment of benefits by K.O. to Atlantic Shore, Defendants waived any purported anti-assignment provisions, ratified the assignment of benefits to Atlantic Shore, and waived or is estopped from using any purported anti-assignment provisions

against Atlantic Shore, due to Defendants' course of dealing with and statements to Atlantic Shore as an out-of-network provider.

64.     As alleged in detail above, Defendants, most particularly UnitedHealthcare, had regular interaction and communication with Atlantic Shore and its representatives over a prolonged period - prior to and after the claim forms were submitted - without ever mentioning the existence of any anti-assignment clause.

65.     The Plan documents as well as federal and New Jersey law, requires the Plan to reimburse out-of-network physicians – such as Atlantic Shore – for medically necessary medical services provided by those physicians to Plan beneficiaries.

66.     As alleged in detail above, Atlantic Shore provided medically necessary surgical services to K.O.

67.     As alleged in detail above, Atlantic Shore timely submitted claim forms to Defendants seeking reimbursement for the medically necessary surgical services it provided to K.O.

68.     As alleged in detail above, Defendants breached the terms of the Plan by failing to properly reimburse Atlantic Shore for the medically necessary surgical services that Atlantic Shore provided to K.O., a plan beneficiary.

69.     By reason of the foregoing, Defendants violated ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

70.     As a result of, among other acts, Defendants' numerous procedural and substantive violations of ERISA and other federal statutes, any appeals are deemed exhausted or excused, and Atlantic Shore is entitled to have this Court undertake a *de novo* review of the issues raised in this Complaint.

71.     Under 29 U.S.C. § 1132(a)(1)(B), Atlantic Shore is entitled to recover unpaid/underpaid benefits from Defendants. Atlantic Shore is also entitled to declaratory and injunctive relief to enforce the terms of the Plan and to clarify its rights to future benefits under the Plan, as well as attorney's fees.

## SECOND CAUSE OF ACTION

72.     Atlantic Shore repeats, reiterates, and re-alleges each and every allegation contained above, as if more fully set forth at length herein.

73.     As assignees and authorized representatives of K.O.'s claims, Atlantic Shore is entitled to receive protection under ERISA, including (a) a "full and fair review" of all claims denied by Defendants; and (b) compliance by Defendants with applicable claims procedure requirements.

74.     Based on all of the foregoing, Defendants' actions and inactions relating to the claims at issue in this lawsuit are tantamount functionally to a denial of these claims.

75.     For denied claims pursuant to 29 U.S.C. § 1133, an ERISA plan must (a) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant; and (b) afford a reasonable opportunity to any participant

whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim. 29 U.S.C. § 1133(1) and (2).

76.     ERISA regulations make clear that, in the case of post-service claims submitted pursuant to group health plans, the required notification that the claim has been denied must be issued within a reasonable period of time, but not later than 30 days after receipt of the claim, unless the member or beneficiary is notified that, due to circumstances beyond the plan's control, the plan requires an additional 15 days to issue a required denial notification. 29 C.F.R. § 2560-503.1(f)(2)(iii)(B).

77.     Although Defendants are obligated to provide a "full and fair review" of denied and underpaid claims pursuant to 29 U.S.C. § 1133, Defendants have failed to do so by, among other things: (a) refusing to provide the specific reason or reasons for the denial or underpayment of claims; (b) refusing to provide the specific plan provisions relied upon to support its denials or underpayments; (c) refusing to provide the specific rule, guideline or protocol relied upon in making the decisions to deny or underpay claims; (d) refusing to describe any additional material or information necessary to perfect a claim, such as the appropriate diagnosis/treatment codes; (e) refusing to notify the relevant parties that they are entitled to have, free of charge, all documents, records and other information relevant to the claims for benefits; (f) refusing to provide a statement describing any voluntary appeals procedure available, or a description of all required information to be given in connection with that procedure; (g) refusing to provide Atlantic Shore with the documents and information relevant to Defendants' denial of the claims; and (h) refusing to timely issue required notifications that the claims have been denied or underpaid.

78.     By failing to comply with the ERISA claims procedure regulations, Defendants failed to provide a reasonable claims procedure.

79.     Because Defendants have failed to comply with the substantive and procedure requirements of ERISA, any administrative remedies are deemed exhausted pursuant to 29 C.F.R. § 2560.503-1(I) and 29 C.F.R. § 590.715-2719(b)(2)(ii)(F)(1).

80.     Exhaustion is also excused because it would be futile to pursue any administrative remedies, because Defendants do not acknowledge any legitimate basis for its denials and thus offers no meaningful administrative process for challenging its denials.

81.     Atlantic Shore has been harmed by Defendants' failure to provide a full and fair review of appeals submitted and failure to comply with applicable claims procedure regulations under ERISA. 29 U.S.C. § 1133.

82.     Atlantic Shore is entitled to relief under 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief, to remedy Defendants' failures to provide a full and fair review, to disclose information relevant to appeals, and to comply with applicable claim procedure regulations.

**<u>THIRD CAUSE OF ACTION</u>**

83.     Atlantic Shore repeats and re-alleges the allegations of the preceding paragraphs as if set forth at length herein.

84.     Through the Assignments of Benefits enumerated above, Atlantic Shore obtained the right to enforce the Plan on behalf of K.O.

85.     The Plan, as detailed above, obligates Defendant to provide reimbursement for the medically necessary, covered health care services provided to K.O., a Plan beneficiary.

86.     As alleged in detail above, Atlantic Shore provided medically necessary, covered surgical services to K.O., a Plan beneficiary.

87.     Atlantic Shore – as well as K.O. – has substantially and materially performed every obligation owed under the Plan to date.

88.     Defendants have breached their obligations under the Plan by failing to timely and properly pay Atlantic Shore for the medically necessary, covered services detailed above.

89.     By reason of the foregoing, Atlantic Shore has been damaged in an amount to be determined at trial.

## **FOURTH CAUSE OF ACTION**

90.     Atlantic Shore repeats and re-alleges the allegations of the preceding paragraphs as if set forth at length herein.

91.     Implied-in-fact contracts arose between Defendants and Atlantic Shore regarding the provision of, and corresponding payment for, the medically necessary, covered health care listed above that were provided to K.O. based on the parties' course of dealings and pattern of conduct.

92.     Specifically, Defendants was aware at, before, or during the time the services were rendered that Atlantic Shore was providing the medically necessary, covered health care services at issue to K.O.

93.     In several cases – most particularly the services rendered on August 21 and December 5, 2018 – Defendants actually approved Atlantic Shore providing the services before they were provided.

94.     Additionally, at other times – most particularly June 6 through June 13, 2018 – the services provided were emergency services.

95.     As alleged in detail above, under New Jersey law, Defendants had a legal obligation to reimburse Atlantic Shore directly for the emergency medical services that Atlantic Shore provided to Plan beneficiary K.O.

96.     As a result of the facts and circumstances surrounding the acts and conduct of the parties, there was a meeting of minds.

97.     This meeting of the minds constituted an implied-in-fact agreement.

98.     Atlantic Shore has substantially and materially performed each and every obligation owed under this implied-in-fact contract.

99.     Defendants, as detailed above, have breached its obligations under this contract by failing to timely and properly pay Atlantic Shore for the medically necessary health care services at issue that Atlantic Shore provided to Plan beneficiary K.O.

**FIFTH CAUSE OF ACTION**

100.    Atlantic Shore repeats and re-alleges the allegations of the preceding paragraphs as if set forth at length herein.

101.    As alleged in detail above, Atlantic Shore was entitled to be paid at its charges, or at the very least, a reasonable rate, by Defendants for the medically necessary, covered health care services provided to K.O., a Plan beneficiary.

102.    Defendants improperly and without justification failed to timely and properly pay Atlantic Shore for the medically necessary and covered services it provided, as alleged above.

103.    Defendants were unjustly enriched by not paying Atlantic Shore at a reasonable rate, or in some cases at all.

104.    This enrichment was at Atlantic Shore's expense.

105.    Given all of the facts and circumstances, Defendants must return this unjust benefit to Atlantic Shore.

106.    By reason of the foregoing, Atlantic Shore has been damaged in an amount to be determined at trial.

**<u>SIXTH CAUSE OF ACTION</u>**

107.    Atlantic Shore repeats and re-alleges the allegations of the preceding paragraphs as if set forth at length herein.

108.    Atlantic Shore had a valid contractual relationship with K.O. arising from: (a) Atlantic Shore's agreement to provide medical treatment and K.O.'s corresponding agreement to pay Atlantic Shore for those services; or (b) each authorization and assignment that Atlantic Shore received from K.O. allowing Atlantic Shore to receive payment directly from Defendants.

109.     Defendants knew of these contractual or business relationships and maliciously, intentionally, and without justification interfered with them by, among other things: (a) issuing denials on claims for medically necessary, covered health care services provided to K.O. without reviewing the medical necessity of the services rendered; (b) issuing medical necessity denials on claims for services provided to K.O. by Atlantic Shore when such services were known by Defendants to be medically necessary; (c) issuing denials on claims for services provided to K.O. by Atlantic Shore in such a way as to avoid external appeal requirements imposed by the New Jersey law; and (d) deliberately avoiding, delaying, and systematically denying reimbursement to Atlantic Shore for medically necessary services provided to K.O. without explanation.

110.     By reason of the foregoing, Atlantic Shore has been damaged in an amount to be determined at trial.

## **SEVENTH CAUSE OF ACTION**

111.     Atlantic Shore repeats and re-alleges the allegations of the preceding paragraphs as if set forth at length herein

112.     Upon information and belief, K.O. entered contracts with Defendants under which Defendants are to pay claims for covered health care services that health care providers rendered to K.O.

113.     Atlantic Shore, as an out-of-network provider who, in the knowledge of Defendants, provides health care services to Defendants' members, is an intended beneficiary of this contract.

114.    Defendants breached this contract by failing to pay Atlantic Shore promptly and properly for covered health care services, as alleged above.

115.    By reason of the foregoing, Atlantic Shore has been damaged at an amount to be determined at trial.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff, Atlantic Shore Surgical Associates, demands judgment against Defendants as follows:

a)      on the first cause of action, awarding Atlantic Shore a recovery under 29 U.S.C. § 1132(a)(1)(B) of unpaid/underpaid benefits from Defendants together with declaratory and injunctive relief to enforce the terms of Defendants' Plan and to clarify its right to future benefits under such plans, as well as attorney's fees;

b)      on the second cause of action, awarding Atlantic Shore relief under 29 U.S.C. § 1132(a)(3), including declaratory and injunctive relief, to remedy Defendants' failures to provide a full and fair review, to disclose information relevant to appeals, and to comply with applicable claim procedure regulations;

c)      on the third cause of action, awarding compensatory in an amount to be determined at trial, together with interest thereon in accordance with the New Jersey Prompt Payment Regulations ( and );

d)       on the fourth cause of action, awarding compensatory damages in an amount to be determined at trial, together with interest thereon in accordance with the New Jersey Prompt Payment Regulations (N.J.A.C. 11:22-1.1);

e)       on the fifth cause of action, awarding compensatory damages in an amount to be determined at trial, together with interest thereon in accordance with the New Jersey Prompt Payment Regulations (N.J.A.C. 11:22-1.1);

f)       on the sixth cause of action, awarding compensatory damages in an amount to be determined at trial, together with interest thereon in accordance with the New Jersey Prompt Payment Regulations (N.J.A.C. 11:22-1.1);

g)       on the seventh cause of action, awarding compensatory damages in an amount to be determined at trial, together with interest thereon in accordance with the New Jersey Prompt Payment Regulations (N.J.A.C. 11:22-1.1); and

h)       awarding such other and further relief as this Court deems equitable, just, or proper, including the costs, disbursements, attorneys' fees, and other allowances of this action.

## **JURY TRIAL DEMANDED**

Plaintiff requests this case to be tried by jury on all issues triable.

Dated: Uniondale, New York
September 5, 2022

HARRIS BEACH, PLLC
*Attorneys for Plaintiff*


By: _____
Kelly Jones Howell

One Gateway Center
Suite 2500
Newark, New Jersey 07102
(201) 848-1244